THE STATE OF KANSAS v. SAMUEL MILTON BONAR.
No. 14,342. (81 Pac. 484.)

SYLLABUS BY THE COURT.

1. HOMICIDE—*Jurors—Order of Challenges—Correction of Errors.* If in a criminal case, for the purpose of correcting errors in overruling challenges to jurors for cause, the district court, after the jurors have been challenged peremptorily, allows the peremptory challenges to stand as challenges for cause, and allows the defendant other peremptory challenges in their stead, which he duly exercises, the departure from the prescribed order does not constitute misconduct in law, and substantial prejudice in fact to the defendant's rights must appear to warrant the granting of a new trial.

2. ———— *Dying Declaration Properly Admitted.* Under the facts of this case, the *ante-mortem* statement of the victim of the homicide was properly admitted as a dying declaration.

Appeal from Washington district court; Hugh Alexander, judge. Opinion filed July 7, 1905. Affirmed.

C. C. Coleman, attorney-general, A. J. Freeborn, T. P. Roney, and Edgar Bennett, for The State.

Charles Smith, Fred Powell, and L. W. Colby, for appellant.

The opinion of the court was delivered by

Burch, J.: S. M. Bonar was convicted of murder in the second degree for the killing of Dr. N. M. Smith, and appeals to this court. Numerous errors are assigned, some of which are abandoned, and but few of which require discussion.

The defendant's challenges of three jurors for cause were overruled when made. Afterward the defendant challenged the same jurors peremptorily. Later in the progress of selecting the jury the court reconsidered its former rulings, allowed the peremptory challenges to stand as challenges for cause, and permitted the defendant three other peremptory challenges in their stead, which he duly exercised. He now complains of this departure from the order prescribed for the impaneling of the jury.

The statute relating to the subject is not one of those whose unarbitrary non-observance by the court is deemed to be misconduct as a matter of law. If the purpose of the variation be the correction of an error, prejudice in fact must appear to warrant the granting of a new trial. A very elaborate argument is made to show that through a violation of the regular method of procedure the organization of a jury might be manipulated to the detriment of a defendant, that the plans of his counsel might be disastrously disconcerted, and that it might be difficult to bring upon the record the facts showing prejudice. But the discussion does not descend from the realm of speculation. Its theo-

retical validity may be conceded; but so far as the record discloses the conduct of the court in this case seems to have proceeded solely from a desire to secure to the accused an absolutely impartial and unprejudiced jury, and no effort has been made to show even the slightest embarrassment resulting to the defense. Therefore the claim of error has not been substantiated.

Complaint is made because certain jurors were not excused upon challenges for cause, and because of the action of the court in propounding to them certain questions to ascertain their competency. No novel proposition of law or unusual question of fact is presented, and it is sufficient to say that the jurors were qualified and that the conduct of the court was proper. The argument based upon the assumption that juror Holmes purposely used the word "murder" with an accurate understanding of its technical legal signification is utterly confuted by the unmistakable tenor of his examination as a whole.

Conceding that under certain circumstances it may be improper for the county attorney to read the dying declaration of the victim of a homicide as a part of his opening statement to the jury, no error in that respect was committed in this case, because of the full admonition of the court to the jury, given at the time, and the subsequent introduction of the document itself in evidence.

It is immaterial whether or not the statement of Doctor Smith referred to in the testimony of T. P. Roney was a part of the *res gestæ,* since the defendant himself, when a witness in his own behalf, admitted and reasserted the fact expressed by the statement.

It was proper to show in evidence all the wounds suffered by the deceased as a result of the encounter. The bullets extracted from his body corroborated the allegations of the information, and the cigar-stub epi-

sode had a material bearing upon the question of who was the aggressor when the shooting took place.

Doctor Smith's *ante-mortem* statement was read in evidence. The only objection to its admissibility worthy of discussion is that it was not made *in articulo mortis* and under a present sense of impending death, unillumined by hope of recovery.

The declarant was himself a doctor. He was shot in the shoulder, and through the abdomen; the portal vein was severed, and his condition was one which his own medical experience might well interpret. Between eight and nine o'clock in the evening he said to a friend: "Senator, I am all in." The friend said: "Doctor, it is n't so bad as that, is it?" To which he replied: "Yes; I don't think I will live until morning." After that he passed into a stupor, and at no time before his death expressed any hope of recovery. He was capable of being roused, and at such times was entirely rational. After the conversation referred to he was examined by a surgeon called for the purpose, who concluded the wound was necessarily fatal because the portal vein had been severed. The surgeon advised him of his condition, and recommended an operation at once for whatever relief was possible. He replied that he would like to wait for his son to come. The operation was performed before eleven o'clock. Shortly before it was undertaken, and at about the time the statement was made, he remarked, when under the stimulus of great pain: "I can't stand this very long." He died a few minutes after two o'clock that night. From this it is apparent he believed himself to be mortally wounded, and fixed the next morning as the ultimate limit of the natural process of dissolution; that he feared the operation might hasten death, and desired that it be postponed to give him an opportunity of seeing his son; and that the pain he suffered led him to believe that the end was very near.

It is immaterial that the form of the declaration was that of an affidavit. Contained in it were some facts not properly provable by a dying declaration, but no motion was made to exclude them. Under the elementary rule the objection to the declaration as a whole did not reach this defect, and no prejudice resulted, since the defendant, when a witness in his own behalf, related substantially the same facts.

The instructions refused were covered in every particular by those given. The instructions given were not obscure or unduly prolix, and correctly stated the law.

The judgment of the district court is affirmed.

All the Justices concurring.